UNITED STATES of America

v.

STATE OF LOUISIANA and Humble Oil & Refining Company.

Civ. A. No. 8607.

United States District Court
W. D. Louisiana,
Lafayette Division.

April 24, 1964.

Edward L. Shaheen, U. S. Atty., and D. H. Perkins, Asst. U. S. Atty., Shreveport, La., for plaintiff.

Jack P. F. Gremillion, Atty. Gen. of Louisiana, Edward M. Carmouche, John Madden, and Ernest Eldred, Asst. Attys. Gen., Baton Rouge, La., for State of Louisiana.

Liskow & Lewis, Lake Charles, La., and W. J. McAnelly, Jr., and Bernard J. Caillouet, New Orleans, La., for Humble Oil & Refining Co.

Henican, James & Cleveland, C. Ellis Henican, New Orleans, La., for intervenor, Exchange Oil Co.

PUTNAM, District Judge.

This suit was filed on December 13, 1961 by the United States at the request of the Secretary of the Interior. It is an action brought against the State of Louisiana and Humble Oil & Refining Company. Jurisdiction is alleged under the provisions of Title 28 U.S.C. § 1345.

There is no question but what jurisdiction attaches under the statute cited above.

Exchange Oil, Inc., claiming an interest in the real estate which is the subject of the litigation under an oil, gas and mineral lease executed by the Bureau of Land Management of the Department of The Interior, was granted leave to intervene as a party plaintiff, on September 20, 1962.

In the complaint it is alleged that Lots Three, Four and Seven of Section 26, Township 14 South, Range 11 East, Louisiana Meridian, and Lots Nine, Ten Eleven and Twelve of Section 35, Township 14 South, Range 11 East, Louisiana Meridian, are and have been part of the public domain from the time of Louisiana Purchase in 1803 to the present; that said lots were reserved to the United States in the patent issued pursuant to Title 30 U.S.C. § 121 et seq., and are still owned by the United States.

It is further alleged that accretions have formed along portions of the lots in question that abut and abutted the navigable stream known as Duck Lake, in the parish of St. Martin, Louisiana; that Buck Lake is a navigable river or stream having a current of moving, silt-bearing water and is a part of the system of waterways flowing continually from its source to the Gulf of Mexico. Title to the property and accretions hereinabove described is claimed by the United States. The prayer is for judgment declaring and decreeing its ownership of the disputed property and minerals therein adjoining Lots Three, Four and Seven of Section 26 and Lots Nine, Ten, Eleven and Twelve of Section 35, all in Township 14 South, Range 11 East, further declaring that the defendants have no right, title or interest whatsoever in the properties involved and minerals therein, and quieting title in the United States.

The government further prays for the cancellation of State Lease No. 711, granted by the State of Louisiana to Humble Oil & Refining Company, for an injunction restraining the defendants from asserting any rights, title or interest in and to the lands and minerals therein, and ordering defendants to account to plaintiff for all mineral revenues resulting from the production of oil and gas from certain production units in which the lands in question are situated.

The defendants in their answer make the following issues:

(1) That Duck Lake is not a navigable river or stream. (They contend rather that it is a navigable body of water and was such in 1812 when Louisiana was admitted to the Union, and that under the terms of, the Act of Admission the bottoms and bed thereof vested in the State by virtue of its sovereignty. 2 Statutes at Large 701, April 8, 1812.)

(2) They deny that any accretions have formed in the area described in the complaint, and, if "accretions" have formed, they deny that title vested in the United States.

(3) They deny that any accretions are included in the area covered by the oil, gas and mineral lease known as State Lease No. 711 granted by the State to Humble Oil & Refining Company.

(4) They deny that any other lands included in such Lease No. 711 belong to the complainant as part of the public domain.

During the course of arguments made on various motions filed by the parties to this action it is clear to the Court that the State will contend that if there is any formation built up along the shore of Duck Lake (which they deny), it has formed an island and is not "accreted" land as claimed by the government and that title to the islands so formed vests in the State of Louisiana.

The matter is presently before the Court on a motion brought by the defendants on April 13, 1964, for a preliminary injunction against the United States pursuant to the provisions of Title 28 U.S.C. § 1651(a), it being alleged that such extraordinary relief is necessary to preserve the jurisdiction of the court and to prevent irreparable injury to the defendants by virtue of the official acts of the United States through the Bureau of Land Management and the Surveyor General of the Department of the Interior which these officers have taken in regard to the property which is the subject of this litigation. A hearing was had on this motion at which the undisputed facts as found by the Court are as follows:

(1) The United States, through the Bureau of Land Management, published a notice of filing of plat of dependent resurvey and accretion survey on Wednesday, March 25, 1964, in the Federal Register, Vol. 29, No. 59. It is asserted in this notice that the plat will be officially filed in the office of the Manager, Land Office, Bureau of Land Management, on April 27, 1964, setting forth that the lands "are open to application, location, selection, and petition under the public land laws".

(2) The plat mentioned in the above described notice of filing is attached to the defendants' motion for preliminary injunction and shows beyond question that the lands included in such survey include some, if not all, of the lands in dispute in this litigation. This is admitted by all parties.

The government's objection to the proceeding for a preliminary injunction was set forth in a motion to strike which was denied by the Court prior to the hearing for preliminary injunction. All objections were reserved and the application was considered. In support of its motion to strike, the United States pleaded its sovereign immunity from suit and a lack of jurisdiction in this court to grant the extraordinary relief prayed for by the defendants. They cite and rely upon numerous authorities wherein this principle is recognized and established. The decisions upon which they rely are as follows: United States v. Sanitary Dairy Products, Inc., 211 F.Supp. 185 (W.D.La.1962); Sanitary Dairy Products, Inc. v. Cook, 211 F.Supp. 183 (W.D. La.1962); Lynch v. United States, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1933); Bryan v. United States, 99 F.2d 549 (10 Cir. 1938); Van Buskirk v. United States, 206 F.Supp. 553 (E.D.Tenn. 1962); Pflueger v. United States, 73 U.S. App.D.C. 364, 121 F.2d 732 (1941); Atlantic Meat Co. v. Reconstruction Finance Corp., 166 F.2d 51 (1 Cir. 1948); United States v. Dry Dock Sav. Institution, 149 F.2d 917 (2 Cir. 1945); United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Belknap v. Schild, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599 (1896); McAvoy v. United States, 178 F.2d 353 (2 Cir. 1949); City of Fresno v. Edmonston, 131 F.Supp. 421 (S.D.Calif.1955); Rank v. United States, 142 F.Supp. 1, 175 (S.D. Calif.1956); Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); City of Fresno v. California, 372 U.S. 627, 83 S.Ct. 996, 10 L.Ed.2d 28 (1963); Kirwan v. Murphy, 189 U.S. 35, 23 S.Ct. 599, 47 L.Ed. 698 (1903).

In our opinion these cases are inapposite. This is not a suit brought against complainant or a situation where a new claim is sought to be interposed against the sovereign by way of counterclaim or motion. Were it such a case, the Court would not be vested with jurisdic-

tion to entertain the claim so advanced in the absence of express statutory authority conferring the consent of the government to be sued. The present suit, however, was instituted by the United States and the Court has jurisdiction under 28 U.S.C. § 1345. The only question to be considered here is whether or not the general inherent power and authority of the Court recognized and codified in 28 U.S.C.A. § 1651(a), confers power upon us to issue the extraordinary writ of injunction to preserve and protect the status quo of property and parties to a suit validly pending before us.

With the adoption of the Judicial Code by Congress in 1948, 28 U.S.C.A. § 1345 was supplemented by the addition of the word "agency" in order to make clear that this section applied to actions by agencies of the government and to conform with special acts authorizing such actions. Further clarification is seen in the addition of the phrase "except as otherwise provided by Act of Congress" at the beginning of the section which, the revisers tell us, was inserted to make clear that jurisdiction existed generally in District Courts over suits brought by the government or governmental agencies in absence of special provisions conferring it elsewhere. (Reviser's Notes, Title 28 U.S.C. § 1345.) There is, therefore, no question but that we have jurisdiction of the main demand.

The cases are legion to the effect that where the United States, as a suitor, exercises its right to invoke the jurisdiction of the federal courts, it is subject to the same rules and is bound by the judgments and orders of the court to the same extent as any private party litigant. It takes the position of a private suitor so far as to agree, by implication at least, that complete justice may be done with regard to the subject matter, so long as public policy or the purpose of federal statutes is not thwarted. United States v. The Thekla, 266 U.S. 328, 45 S.Ct. 112, 69 L.Ed. 313 (1924); Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224 (1938); United

States v. Martin, 267 F.2d 764 (10 Cir. 1959).

In the very early case of Carr v. United States, 98 U.S. 433, 25 L.Ed. 209 (1879), the Supreme Court drew the distinction between suits brought *by the government*, where the aid of the Court was sought to establish or reclaim the sovereign's rights in property, and suits brought by individuals *against the government* to deprive it of its title. It was pointed out in that decision that in cases falling into the first category, the prior rights of others to the same property will be adjudicated and allowed, and that such adjudication by the Court is binding upon all parties to this suit. See also: 54 Am.Jurisprudence U.S. § 116, p. 627; 91 C.J.S. United States § 183, p. 420; Wright, Federal Courts, § 22, p. 60.

Having jurisdiction over the United States as a party, that jurisdiction is implemented by the provisions of 28 U.S.C. § 1651(a), to the extent that the Court "may issue all writs necessary or appropriate in aid of" such jurisdiction, provided that the action is "agreeable to the usages and principles of law". This section, as it appears in the Judicial Code of 1948, 28 U.S.C. is a codification of the former section 377 of Title 28 U.S.C., 1940, along with other sections dealing with the subject of writs in aid of jurisdiction. Again, reference to the Reviser's Notes makes clear that:

"The revised section extends the power to issue writs in aid of jurisdiction, to all courts established by Act of Congress, *thus making explicit the right to exercise powers implied from the creation of such courts.*" (Reviser's Notes, Title 28 U.S.C., Judiciary and Judicial Procedure. Appendix House Report No. 308, April 25, 1947, 80th Cong. Emphasis Supplied.)

Under this statute, it is hornbook law that the Court is vested with such authority as is here sought to be invoked. See Vol. 54 Am.Jurisprudence, U. S. Courts § 14, p. 674; Vol. 36A C.J.S., Federal Courts § 311, p. 59. That the

writ of injunction is such a writ as is contemplated by the statute in question is settled beyond question. See Vol. 36A C.J.S. Federal Courts § 311, p. 62, and cases collected in note 22.

The writ has rarely been invoked against the United States. We find in our research only one instance of its application. By coincidence, the State of Louisiana and the Federal Government were parties to the action there. United States v. Louisiana, 351 U.S. 946, 76 S.Ct. 842, 100 L.Ed. 1471 again at 351 U.S. 978, 76 S.Ct. 1043, 100 L.Ed. 1494 (1956).

In that case, as reflected by the first memorandum of the Supreme Court, the Court said:

"In the meantime the parties are invited to express their views as to *maintenance of the status quo pending final disposition of the cause here.*" (351 U.S. 946, 76 S.Ct. 842, 100 L.Ed. 1471. Emphasis Supplied.)

The matter before the Court was a motion by the United States to enjoin the State from further prosecuting a cause against the government in a state court proceeding involving the tidelands in the Gulf of Mexico. In the second memorandum following arguments, the Court granted the injunctive relief sought by the United States, and went further, apparently in aid of its jurisdiction and to provide for "maintenance of the status quo", by entering the following decree:

"It is further ordered that the State of Louisiana *and the United States of America* are enjoined from leasing or beginning the drilling of new wells in the disputed tidelands area pending further order of this Court unless by agreement of the parties filed here." (351 U.S. 978, 76 S.Ct. 1043, 100 L.Ed. 1494. Emphasis Supplied.)

▮ Our sole inquiry, then, is whether or not the issuance of this preliminary injunction is necessary to preserve the res in this suit and to protect the juris-

diction of the Court, which has already attached. In order to resolve this question, it is necessary to determine the effect of the actions of the plaintiff, the United States, through its officers, in making the survey and recording same. At the very least this survey will have the effect of providing the plaintiff with proof of the boundaries of the accretions and lands involved in this litigation which would be unassailable except by administrative remedy. Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566 (1888); Kirwan v. Murphy, 189 U.S. 35, 23 S.Ct. 599, 47 L.Ed. 698 (1903); Conkling Mining Co. v. Silver King Coalition Mines Co., 230 F. 553 (8 Cir. 1916) reversed on other grounds, 255 U.S. 151, 41 S.Ct. 310, 65 L.Ed. 561 and 256 U.S. 18, 41 S.Ct. 426, 65 L.Ed. 811 (1921); United States ex rel. McCullough v. Lane, 50 App.D.C. 123, 269 F. 202 (1920), writ of error dismissed, 258 U.S. 632, 42 S.Ct. 314, 66 L.Ed. 801 (1922). Indeed, in the brief submitted by the government in this case this is recognized in the following language:

"The Commissioner of the General Land Office acting under the direction of Secretary of Department of The Interior performed executive duties appertaining to the surveying of public lands of the United States in the case at bar and the decisions of the General Land Office are unassailable by the courts in an ancillary proceeding such as filed by defendants. The lands surveyed were public lands and certainly within the authority of the General Land Office. Accordingly, injunctive relief is not possible under the circumstances." (p. 13)

The conclusion is inescapable that in causing this survey to be made and in attempting to record the official plat thereof as advertised in the federal register, the Department of The Interior, through its officers and agents in charge of public lands, has already determined or is attempting to determine and make final the very issues involved in this suit,

that is, that Duck Lake was a navigable stream as opposed to a navigable body of water at the time Louisiana was admitted to the Union, that accretions have formed along the shore of Duck Lake as indicated in the area included in the boundaries shown on this very plat, and that title to all of the area within the boundaries so delineated is vested in the United States. Implicit in this finding is the further finding that the State of Louisiana and the defendant Humble Oil & Refining Company have no rights in and to this property.

These determinations are beyond the jurisdiction of the Department of The Interior. It is not a question of authority to make surveys and determine boundaries, but rather a lack of authority to determine ownership through such surveys. Borax Consolidated v. City of Los Angeles, 296 U.S. 10, 56 S.Ct. 23, 80 L.Ed. 9 (1935). This lack of jurisdiction is further recognized by complainant's own regulations. Manual of Instructions for Survey of Public Lands, U. S., 1947, Dept. of Interior, § 233, p. 235 and § 520 p. 370.

We conclude that the issues presented in the application for preliminary injunction are incidental and germane to the main action and within the purview of 28 U.S.C. § 1651(a).

Making the plat of survey official and opening the properties in dispute to application, location, selection and petition under the public land laws of the United States would place petitioner in the advantageous position of requiring defendants to proceed administratively for redress, and, if successful, to then take judicial action before another forum and at a distant date. Not only does this cause irreparable injury to defendants, what is more important it disturbs the status quo of the res in this suit, and would result in a multiplicity of actions and proceedings.

The Court believes that justice and the "usages and purposes of the law" will be best served by an orderly completion of the present suit, after due process, full hearing and deliberation by the Court. The interference with these processes is not justified, and is enjoined.

These reasons are ordered filed in support of the action of the Court taken April 20, 1964, and the writ of injunction issued on that date. The Court acknowledges the rough draft of suggested findings and conclusions furnished this date by the attorneys for defendants at my request. The foregoing opinion, however, fully sets forth the findings and conclusions of the Court, and the attorneys are now relieved of the necessity of going forward with such suggestions. Those received, although in rough form, are also ordered filed in the record.